# In the United States Court of Federal Claims

No. 17-1049C
Filed: August 14, 2018
NOT FOR PUBLICATION

| | |
|---|---|
| MANUEL A. SOLDEVILA-CUESTA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant. ) <br> ) | RCFC 12(b)(1); RCFC 52.1; Military Pay Act, 37 U.S.C. § 204; Military Disability Retirement Pay Act, 10 U.S.C. § 1201. |

*William E. Cassara*, Counsel of Record, Evans, GA, for plaintiff.

*Michael D. Snyder*, Trial Attorney, *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Major Shessy Davis*, Of Counsel, United States Army Legal Services Agency, Fort Belvoir, VA, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

### I.   INTRODUCTION

Plaintiff, Manuel A. Soldevila-Cuesta, a former service member in the United States Army (the "Army"), brings this military pay action against the United States alleging that he has been wrongfully discharged from the Army and improperly denied disability retirement benefits. As relief, plaintiff seeks disability and back pay, and certain injunctive relief, pursuant to the Military Pay Act, 37 U.S.C. § 204, and the Military Disability Retirement Pay Act, 10 U.S.C. § 1201. *See generally* Compl.

The government has moved to partially dismiss this matter for lack of subject-matter jurisdiction and for judgment upon the administrative record, pursuant to Rules 12(b)(1) and 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons discussed below, the Court:  (1) **GRANTS** the government's partial motion to dismiss; (2) **GRANTS** the

government's motion for judgment upon the administrative record; and (3) **DISMISSES** the complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

Plaintiff, Manuel A. Soldevila-Cuesta, alleges in this action that he has been wrongfully discharged from the Army and denied certain disability retirement benefits.  In the complaint, plaintiff alleges that the government failed to pay him certain pay and allowances that he is entitled to under the Military Disability Retirement Pay Act, 10 U.S.C. § 1201.  Compl. at ¶¶ 28-30.  Plaintiff also alleges that the government failed to pay him the pay and allowances that he is entitled to under the Military Pay Act, 37 U.S.C. § 204.  *Id*. at ¶¶ 31-33.  As relief, plaintiff seeks to recover disability and back pay, and certain injunctive relief, from the government.  *Id*. at Prayer for Relief.

#### 1.  Plaintiff's Military Service

Plaintiff served in the Army on active duty and as a reservist during the period October 22, 1991, to September 23, 2011.  AR at 26, 1122, 2714, 2716; *see also* Compl. at ¶¶ 5, 18, 25; Def. Mot. at 3, 7.  On September 23, 2011, plaintiff was separated from the Army with an other than honorable discharge.  AR at 1122, 2714, 2716; *see also* Compl. at ¶ 18; Def. Mot. at 7.

During the course of his military career, plaintiff was deployed in Iraq.  AR at 2722; *see also* Compl. at ¶¶ 6, 9; Def. Mot. at 5.  The parties agree that, on March 10, 2010, plaintiff received a medical examination as part of the post-deployment health reassessment program.  Compl. ¶ 10; Def. Mot. at 5.

It is undisputed that plaintiff received a diagnosis of anxiety disorder not otherwise specified ("NOS") and that he was prescribed medication for depression as a result of this medical examination.  Compl. at ¶ 10; Def. Mot. at 5.  On April 27 and April 28, 2010, plaintiff received additional medical examinations, during which he reported, among other things,

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); the complaint ("Compl."); and the government's partial motion to dismiss and motion for judgment upon the administrative record ("Def. Mot").  Except where otherwise noted, all facts recited herein are undisputed.

2

anxiety, panic attacks, trouble sleeping, depression, and excessive worry. AR at 782-87; *see also* Compl. at ¶ 11; Def. Mot. at 6.

It is undisputed that plaintiff was arrested for engaging in a relationship with a minor on November 1, 2010.[2] Compl. at ¶ 12; Def. Mot. at 3, 6; *cf.* AR at 2015. After the arrest, the Army initiated a report to suspend favorable personnel actions regarding plaintiff, which prevented a favorable action on behalf of plaintiff while certain adverse actions or potential violations were being investigated. Compl. at ¶ 12; Def. Mot. at 3 n.2; *see generally* Army Reg. 600-8-2 (Dec. 23, 2004).

On December 8, 2010, the Army initiated a command directed evaluation ("CDE"), during which plaintiff's health was assessed. AR at 2007-19; *see also* Compl. at ¶ 13; Def. Mot. at 6, 14. Following the CDE, plaintiff was determined to be fit for duty. AR at 2018-19; *see also* Compl. at ¶ 13; Def. Mot. at 14. But, the Army found plaintiff to be unfit to hold a security clearance and plaintiff was no longer permitted to carry a firearm. AR at 2018-19; *see also* Compl. at ¶ 13; Def. Mot. at 14.

The parties agree that the Army served plaintiff with an initiation of elimination based upon plaintiff's inappropriate relationship with a minor on December 30, 2010. Compl. at ¶ 14; Def. Mot. at 3-4, 6; *cf.* AR at 2015. Thereafter, plaintiff sought additional mental health treatment. Compl. at ¶ 15; Def. Mot. at 7.

In this regard, plaintiff was diagnosed with anxiety and depressed mood on January 12, 2011. AR at 2024; *see also* Compl. at ¶ 15; Def. Mot. at 7. On January 21, 2011, plaintiff was diagnosed with major depression, anxiety disorder NOS, and anxiety disorder with depressed mood. AR at 2026-30; *see also* Compl. at ¶ 15; Def. Mot. at 7. In addition, on February 17, 2011, plaintiff was diagnosed with chronic post-traumatic stress disorder ("PTSD") and major depression. AR at 464, 2035-36; *see also* Compl. at ¶ 15; Def. Mot. at 7.

## 2. The BOI And Separation From Service

The parties agree that, on May 19, 2011, a Board of Inquiry ("BOI") was convened to consider whether plaintiff should be discharged from the Army in light of his arrest for having an

---

[2] It is undisputed that plaintiff pled no contest to these civilian charges and he was sentenced to ten years of probation on July 23, 2012. Compl. at ¶ 18; Def. Mot. at 4.

inappropriate relationship with a minor. Compl. at ¶17; Def. Mot. at 4, 7; *cf.* AR at 2015. The parties also agree that plaintiff attended the BOI proceedings and that he was represented by counsel during these proceedings. Compl. at ¶ 17; Def. Mot. at 4.

Plaintiff acknowledges that he did not make a statement during the BOI proceedings, and that neither plaintiff nor his attorney addressed plaintiff's mental health status during the BOI proceedings. Compl. at ¶ 17. It is also undisputed that at the conclusion of the BOI proceedings, the BOI voted to separate plaintiff from the Army with an other than honorable characterization of service. AR at 1122, 2714; *see also* Compl. at ¶ 17; Def. Mot. at 4, 7.

Following his separation from the Army, plaintiff petitioned the United States Department of Veterans Affairs (the "VA") for disability retirement benefits and assistance with his mental health conditions. AR at 5-11, 2327. Although the VA initially rated plaintiff's disability at 50 percent based upon his PTSD, the VA increased the rating to 100 percent in 2014. *Id*. at 26, 2327.

### B. Procedural History

Plaintiff commenced this action on August 3, 2017. *See generally* Compl. On January 19, 2018, the government filed the administrative record. *See generally* AR.

On January 19, 2018, the government filed a partial motion to dismiss this matter for lack of subject-matter jurisdiction and a motion for judgment upon the administrative record, pursuant to RCFC 12(b)(1) and 52.1. *See generally* Def. Mot. On March 22, 2018, plaintiff filed a response and opposition to the government's partial motion to dismiss and motion for judgment upon the administrative record. *See generally* Pl. Resp. On June 6, 2018, the government filed a reply in support of its partial motion to dismiss and motion for judgment upon the administrative record. *See generally* Def. Reply.

The government's partial motion to dismiss and motion for judgment upon the administrative record having been fully briefed, the Court addresses the pending motions.

### III.  LEGAL STANDARDS

####   A.  RCFC 12(b)(1) And Jurisdiction

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1).  But, plaintiff bears the burden of establishing subject-matter jurisdiction, and he must do so by a preponderance of the evidence.  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim."  *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute . . . ."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act is, however, a "jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists."  *United States v. Testan*, 424 U.S. 392, 398 (1976) (citation omitted).  And so, to pursue a claim against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States.  *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003).  "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the

duties [it] impose[s].'" *Fisher*, 402 F.3d at 1173 (brackets existing) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).

Specifically relevant to this matter, the Military Pay Act is a money-mandating source of law that provides the Court with jurisdiction under the Tucker Act. *See Bias v. United States*, 131 Fed. Cl. 350, 354 (2017), *aff'd in part and rev'd in part*, 722 F. App'x 1009 (Fed. Cir. 2018) (citations omitted) ("[T]he Military Pay Act . . . is a money-mandating source of law that provides the court with jurisdiction."); *see also* 37 U.S.C. § 204. In this regard, the United States Court of Appeals for the Federal Circuit has held that the Military Pay Act is typically the applicable money-mandating statue to be invoked in the context of military discharge cases. *See Martinez*, 333 F.3d at 1303 ("In the context of military discharge cases, the applicable 'money-mandating' statute that is generally invoked is the Military Pay Act, 37 U.S.C. § 204."). The Federal Circuit has also recognized that the Military Disability Retirement Pay Act, 10 U.S.C. § 1201, is a money-mandating source of law. *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005) (holding that 10 U.S.C. § 1201 is a money-mandating statute); *see also* 10 USC §1201; *Doe v. United States*, No. 08-246C, 2009 WL 260967, at *7-8 (Fed. Cl. Jan. 30, 2009). And so, the Court may consider military pay claims brought pursuant to the Military Pay Act and the Military Disability Retirement Pay Act.

### B. RCFC 52.1

Unlike summary judgment pursuant to RCFC 56, the existence of genuine issues of material fact does not preclude a grant of judgment upon the administrative record pursuant to RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011). Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).

In reviewing challenges to military corrections board decisions under RCFC 52.1, the Court is "'limited to determining whether a decision of the [c]orrection [b]oard is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations.'" *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983)); *see also Volk v. United States*, 111 Fed. Cl. 313, 325 (2013) (citing *Arens v. United States*, 969 F.2d 1034, 1037 (Fed. Cir.

6

1992)). And so, correction board decisions may be reviewed for failure to correct plain legal error committed by the military, including the violation of a statute, a regulation, a published mandatory procedure, or an unauthorized act. *Volk*, 111 Fed. Cl. at 325.

### C. The Military Pay Act And The Military Disability Retirement Pay Act

Pursuant to the Military Pay Act, 37 U.S.C. § 204, members of a uniformed service are entitled to the basic pay of the pay grade to which they are assigned or distributed, in accordance with their years of service. 37 U.S.C. § 204 (a). The Federal Circuit has recognized that the Military Pay Act "provides for suit in [this Court] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." *Antonellis v. United States*, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (quoting *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004)); *see also Sanders v. United States*, 594 F.2d 804, 810-11 (Ct. Cl. 1979) (en banc).

The Military Disability Retirement Pay Act, 10 U.S.C. § 1201, governs military retirement for disability. *See Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005); *Fisher v. United States*, 364 F.3d 1372, 1379 (Fed. Cir. 2004), *rev'd on other grounds*, 402 F.3d 1167 (Fed. Cir. 2005); *see also* 10 U.S.C. § 1201. Under the Act, the Secretary may retire a service member with retired pay if the Secretary concerned makes a determination that a service member is unfit to perform the duties of the service member's office, grade, rank, or rating because of physical disability. 10 U.S.C. § 1201(a).

### D. 10 U.S.C. § 1177

Title 10, United States Code, Section 1177 provides that, among other things, the Secretary of a military department shall ensure that a service member who has been deployed overseas during the previous 24 months—and who is diagnosed by a physician, clinical psychologist, psychiatrist, licensed clinical social worker, or psychiatric advanced practice registered nurse as experiencing PTSD or traumatic brain injury, or reasonably alleges that he or she was influenced by PTSD or traumatic brain injury based upon that deployment—receives a medical examination to evaluate a diagnosis of PTSD or traumatic brain injury. 10 U.S.C. § 1177(a)(1). The statute further provides that a service member who has been referred for a medical examination for this reason "shall not be administratively separated under conditions other than honorable" until the results of the medical examination have been reviewed by appropriate authorities, as determined by the Secretary concerned. 10 U.S.C. § 1177(a)(2).

### E. Army Regulations 635-40 And 40-501

Lastly, Army Regulation 635-40 addresses disability processing and provides, in relevant part, that:

> A commissioned or warrant officer will not be referred for disability processing instead of elimination action (administrative separation) that could result in separation under other than honorable conditions. Officers in this category who are believed to be unfit because of physical disability will be processed simultaneously for administrative separation and physical disability evaluation.

Army Regulation 635-40 at ¶ 4-4*a* (Feb. 8, 2006); *see also* Def. Mot. at 14.

In addition, Army Regulation 40-501 addresses the medical fitness standards for retention and separation, including retirement. Army Reg. 40-501 (Aug. 4, 2011). The version of this regulation that is applicable to this case provides, in relevant part that:

> This chapter gives the various medical conditions and physical defects which may render a Soldier unfit for further military service and which fall below the standards required for the individuals in paragraph 3-2, below. These medical conditions and physical defects, individually or in combination, are those that—
>
> *a.* Significantly limit or interfere with the Soldier's performance of their duties.
>
> *b.* May compromise or aggravate the Soldier's health or well-being if they were to remain in the military Service. This may involve dependence on certain medications, appliances, severe dietary restrictions, or frequent special treatments, or a requirement for frequent clinical monitoring.
>
> *c.* May compromise the health or well-being of other Soldiers.
>
> *d.* May prejudice the best interests of the Government if the individual were to remain in the military Service.

*Id*. at ¶ 3-1. The regulation also addresses referrals to a medical evaluation board ("MEB") and a physical evaluation board ("PEB") and provides, in relevant part, that:

> Soldiers with conditions listed in this chapter who do not meet the required medical standards will be evaluated by an MEB as defined in AR 40-400 and will be referred to a PEB as defined in AR 635-40 with the following caveats:
>
> *a.* [U.S. Army Reserve] or [Army National Guard/ Army National Guard of the United States] Soldiers not on active duty, whose medical condition was

8

>   not incurred or aggravated during an active duty period, will be processed in accordance with chapter 9 and chapter 10 of this regulation.
>
>   b. Soldiers pending separation in accordance with provisions of AR 635-200 or AR 600-8-24 authorizing separation under other than honorable conditions who do not meet medical retention standards will be referred to an MEB.  In the case of enlisted Soldiers, the physical disability processing and the administrative separation processing will be conducted in accordance with the provisions of AR 635-200 and AR 635-40.  In the case of commissioned or warrant officers, the physical disability processing and the administrative separation processing will be conducted in accordance with the provisions of AR 600-8-24 and AR 635-40.
>
>   . . . .
>
>   d. Physicians who identify Soldiers with medical conditions listed in this chapter should initiate an MEB at the time of identification.  Physicians should not defer initiating the MEB until the Soldier is being processed for nondisability retirement.  Many of the conditions listed in this chapter (for example, arthritis in para 3-14*b*) fall below retention standards only if the condition has precluded or prevented successful performance of duty.  In those cases when it is clear the condition is long standing and has not prevented the Soldier from reaching retirement, then the Soldier meets the standard and an MEB is not required.

*Id*. at ¶ 3-3.  Lastly, the regulation addresses the criteria for the referral to an MEB for soldiers possessing mood disorders, anxiety, somatoform, or dissociative disorders and provides that such referral may be made where a soldier exhibits:

>   a. Persistence or recurrence of symptoms sufficient to require extended or recurrent hospitalization; or
>
>   b. Persistence or recurrence of symptoms necessitating limitations of duty or duty in protected environment; or
>
>   c. Persistence or recurrence of symptoms resulting in interference with effective military performance.

*Id*. at ¶¶ 3-32, 3-33.

## IV. LEGAL ANALYSIS

The government has moved to partially dismiss this matter for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1), upon the ground that the Court does not possess subject-matter jurisdiction to consider plaintiff's disability retirement benefits claim because plaintiff did not exhaust administrative remedies related to that claim before commencing this action. Def. Mot. at 8-10. The government has also moved for judgment upon the administrative record, pursuant to RCFC 52.1, upon the grounds that: (1) plaintiff has waived the argument that the Army should have considered his mental health status at the time of his discharge because plaintiff did not raise this argument before the BOI and (2) the Army's decision to discharge plaintiff based upon misconduct was reasonable and in accordance with applicable law. *Id*. at 11-17. And so, the government requests that the Court dismiss plaintiff's disability retirement benefits claim and enter judgment in the government's favor with regards to plaintiff's wrongful discharge claim. *Id*. at 8-17.

Plaintiff counters in his response and opposition to the government's motions that dismissal of this matter is not appropriate because the Army wrongfully separated him from active duty while he was injured, entitling him to recover back pay. Pl. Resp. at 8-9. In addition, plaintiff argues that the Army's discharge decision was arbitrary, capricious, and contrary to law, because the Army improperly separated him from military service without simultaneously referring plaintiff for disability processing. *Id*. at 9-12.

For the reasons set forth below, the Court does not possess subject-matter jurisdiction to consider plaintiff's disability retirement benefits claim, because plaintiff did not exhaust administrative remedies with respect to that claim before commencing this action. The administrative record and the undisputed facts in this case also show that plaintiff has waived the argument that the Army should have considered his mental health status at the time of his discharge from the Army. And so, for the reasons discussed below, the Court: (1) **GRANTS** the government's partial motion to dismiss; (2) **GRANTS** the government's motion for judgment upon the administrative record; and (3) **DISMISSES** the complaint.

### A. The Court May Not Consider Plaintiff's Claim For Disability Retirement Benefits

As an initial matter, the Court does not possess subject-matter jurisdiction to consider plaintiff's claim for disability retirement benefits. In Count I of the complaint, plaintiff alleges that the government failed to pay him certain disability retirement benefits that he is entitled to under the Military Disability Retirement Pay Act, because he incurred a disqualifying physical disability while deployed on active duty. Compl. at ¶¶ 28-30. And so, plaintiff seeks to recover "[p]ayment of all wrongfully denied pay and allowances due to him under law." *Id*. at Prayer for Relief. The Court may not consider plaintiff's claim.

It is well-established that this Court does not possess subject-matter jurisdiction to consider plaintiff's military disability benefits claim, unless a military board first evaluates his entitlement to disability retirement benefits. *Chambers*, 417 F.3d at 1225. In *Barnick*, the Federal Circuit described the process for securing military disability retirement benefits and explained that, when a service member is injured in the line of duty, he may claim disability payments, including disability retirement, if the disability is permanent. *Barnick v. United States*, 591 F.3d 1372, 1375 (Fed. Cir. 2010). Such a claim is first considered by a medical evaluation board or MEB, which reviews the individual's medical records to determine the nature of the disability. *Id*. If a disability is found to be permanent, the matter is referred to a physical evaluation board, or PEB, to provide a formal fitness and disability determination. *Id*.

The Federal Circuit has also explained that if the PEB finds the service member to be unfit for duty and permanently disabled, the board assigns a disability rating that determines whether disability retirement, or discharge with the option to receive a lump-sum disability severance payment is recommended. *Id*.; *see also* 10 U.S.C. §§ 1201, 1203. And so, the Federal Circuit has held that, if a claimant has been improperly denied disability retirement benefits as a result of this process, the claimant is entitled to receive the disability retirement payments due to be paid as a remedy. *Barnick*, 591 F.3d at 1380; *see also Williams v. United States*, 100 Fed. Cl. 263, 279 n.20 (2011) (observing that, when a service member concedes that he is unfit for duty, the service member is not entitled to reinstatement and back pay and that the appropriate remedy is for retroactive disability pay).

11

In this case, plaintiff's ability to recover disability retirement pay is predicated upon the requirement that he first pursue any claim for disability retirement benefits before the relevant agency. *See Chambers*, 417 F.3d at 1224-25. Plaintiff concedes that he did not present a claim for disability retirement benefits to the Army Board for Correction of Military Records ("ABCMR") before commencing this action. *See* Pl. Resp. at 8. Given this, there can be no dispute that plaintiff has not exhausted his administrative remedies with respect to his disability retirement benefits claim. And so, the Court must dismiss plaintiff's claim for disability retirement benefits for lack of subject-matter jurisdiction.[3] *Chambers*, 417 F.3d at 1225; RCFC 12(b)(1).

### B. Plaintiff Has Waived The Argument That The Army Should Have Considered His Mental Health Status At The Time Of His Discharge

Turning to the merits of plaintiff's wrongful discharge claim, the administrative record and the undisputed facts in this matter make clear that plaintiff has waived the argument that the Army should have considered his mental health status at the time of his discharge from the Army. And so, the Court **GRANTS** the government's motion for judgment upon the administrative record with respect to plaintiff's wrongful discharge claim.

In Count II of the complaint, plaintiff alleges that the Army "failed to pay [him] the pay and allowances that he is entitled to receive under [the Military Pay Act,] 37 U.S.C. § 204, as a result of the Army's failure to obtain a medical evaluation that would have assessed whether the effects of PTSD constituted matters in extenuation for the basis of his administrative separation under other than honorable conditions." Compl. at ¶ 33. Plaintiff also alleges in the complaint that "[t]here was no evidence presented to the [BOI] about [his] mental health challenges and PTSD diagnosis." *Id*. at ¶ 17. And so, plaintiff acknowledges that neither he, nor his lawyer, presented any evidence about his PTSD diagnosis or mental health condition to the BOI convened to consider his separation from the Army. *Id*.

It is well-established that a party generally may not challenge an agency decision on a basis that was not presented to the agency. *In re DBC*, 545 F.3d 1373, 1378 (Fed. Cir. 2008); s*ee*

---

[3] Plaintiff appears to withdraw his disability retirement claim in his response and opposition to the government's motions. Pl. Resp. at 8 ("Mr. Soldevila is aware of the jurisdictional predicates for raising physical disability claims and does not make them at this time.").

*Woodford v. Ngo*, 548 U.S. 81, 90, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) ("'[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*.'"); *Parks v. United States*, 127 Fed. Cl. 677, 680 (2016). The requirement that a party object to an agency prior to attacking that agency's action before this Court serves two primary purposes. *See In re DBC*, 545 F.3d at 1378; *see also Woodford*, 548 U.S. at 89. First, this requirement "'gives [the] agency an opportunity to correct its own mistakes . . . before it is haled into federal court, and [thus] discourages disregard of [the agency's] procedures.'" *In re DBC*, 545 F.3d at 1378 (brackets existing) (quoting *Woodford*, 548 U.S. at 89). Second, requiring that a party make an objection to the agency promotes judicial efficiency, because "[c]laims generally can be resolved much more quickly and economically in proceedings before [the] agency than in litigation in federal court." *Id*. at 1379 (brackets existing) (quoting *Woodford*, 548 U.S. at 89).

Because there is no dispute in this matter that plaintiff did not raise any argument regarding his PTSD diagnosis or mental health status during the discharge proceedings before the BOI, the Army has had no opportunity to consider plaintiff's claim that his PTSD diagnosis warranted a referral to an MEB. Had plaintiff raised this argument before the BOI, the Army would have had the opportunity to consider whether it was appropriate to refer plaintiff for disability processing—or to consider whether plaintiff's PTSD was a mitigating or extenuating factor regarding his misconduct—prior to separating plaintiff from the Army. *Id*. at 1378.

In addition, if plaintiff had raised his mental health status before the BOI, plaintiff might also have obtained the very relief that he now seeks in this Court—additional disability retirement pay and back pay—without the need to pursue this litigation. *Id*. Given this, the Court agrees with the government that plaintiff has waived the argument that the Army should have considered his PTSD diagnosis and mental health status at the time of his discharge from the Army. And so, the Court **GRANTS** the government's motion for judgment upon the administrative record with respect to plaintiff's wrongful discharge claim.

Lastly, while the Court need not reach this issue to resolve this military pay dispute, the Court also observes that the administrative record and the undisputed facts in this case indicate that the Army reasonably decided to separate plaintiff from the military based upon plaintiff's

misconduct.[4] In this regard, there is no dispute that the Army separated plaintiff from military service with a less than honorable discharge because of plaintiff's arrest for having an inappropriate relationship with a minor. Compl. at ¶ 17; Def. Mot. at 4, 7; *cf.* AR at 2015. Plaintiff also does not dispute that he engaged in this misconduct. Pl. Resp. at 2, 10-11; *see also* AR at 2015.

More importantly, plaintiff does not identify any statute or regulation that the Army actually violated by discharging him based upon this misconduct. Indeed, while plaintiff argues that the Army violated Army Regulation 635-40, by discharging him without a referral to an MEB, this argument is belied by the plain text of this regulation and the administrative record.

Army Regulation 635-40 provides that:

A commissioned or warrant officer will not be referred for disability processing instead of elimination action (administrative separation) that could result in separation under other than honorable conditions. Officers in this category who are *believed to be unfit* because of physical disability will be processed simultaneously for administrative separation and physical disability evaluation.

Army Reg. 635-40 at ¶ 4-4*a* (Feb. 8, 2006) (emphasis supplied). And so, this regulation makes clear that only commissioned or warrant officers who are believed to be *unfit* will be simultaneously processed for administrative separation and physical disability retirement. The administrative record here shows that the Army medically evaluated plaintiff after his arrest in 2010, and that the Army found plaintiff to be fit for duty. AR at 2018-19. The Army's fitness determination also warrants a degree of judicial deference, given the Army's unique expertise in determining fitness for military service. *Pearl v. United States*, 111 Fed. Cl. 301, 311 (2013). Given this, the Army had no obligation to refer plaintiff to an MEB for disability processing under Army Regulation 635-40, as plaintiff suggests.

To the extent that plaintiff disagrees with the Army's fitness determination, this is an argument that plaintiff should have raised in the first instance before the BOI at the time of his separation from the Army. Plaintiff's argument that the Army violated 10 U.S.C. § 1177, by

---

[4] While the parties agree about the nature and outcome of the board of inquiry related to plaintiff's discharge from the Army, the parties do not identify any documents in the administrative record that relate to the board of inquiry and the Court does not find any such documents in the administrative record. *See generally* AR.

failing to refer him to an MEB, should also have been raised before the BOI at the time of plaintiff's separation from the Army.[5]  By bringing this action six years after his separation from the Army, plaintiff improperly seeks to topple over the Army's discharge decision for an alleged error that he never raised with the BOI.  Because plaintiff has waived the ability to belatedly raise this argument, and the administrative record also fails to support his wrongful discharge claim, the Court GRANTS the government's motion for judgment upon the administrative record with respect to this claim.

## V.     CONCLUSION

In sum, a generous reading of the complaint makes clear that the Court does not possess subject-matter jurisdiction to consider plaintiff's disability retirement benefits claim.  In addition, the administrative record and the undisputed facts in this matter show that plaintiff has waived the argument that the Army should have considered his mental health status at the time of his separation from the military.

And so, for the foregoing reasons, the Court:

1. **GRANTS** the government's partial motion to dismiss with respect to plaintiff's disability retirement benefits claim;

2. **GRANTS** the government's motion for judgment upon the administrative record with respect to plaintiff's wrongful discharge claim; and

3. **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

---

[5] Section 1177 requires, among other things, that a service member who has been deployed overseas during the previous 24 months, and who has been diagnosed with PTSD, receive a medical examination and that such a service member "shall not be administratively separated under conditions other than honorable" until the results of the medical examination have been reviewed by appropriate authorities.  10 U.S.C. § 1177(a).

Each party shall bear their own costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge
